O’Neaug, J.
In these cases, as in Bedon v. Bedon, the question which decides the whole matter is, what estate did Thomas *Henry Barksdale take under the will of his father, George Barksdale, <- deceased. This, in its development and decision, will require us to give consideration to the will. 1st. As to the bequest in favor of Henry Bona, and the executory devise to George and Eliza Edwards. 2d. If the last should fail, then as to the estate of Thomas Henry Barksdale in the land of the testator under his will, whether it be a fee conditional, or a fee-simple.
1. A general rule of construction is, that the whole will should be construed together, so that we may arrive at the entire intention of the testator, not at unconnected parts of it This rule applies where there are many clauses, unless indeed it should be the case that the same article of property is given by different clauses to different persons; in that case the last clause is regarded as the last disposition, revoking all which had gone before it. This will, however, it seems to me, is but one devise or bequest, contained in a single clause, and must, therefore, be more immediately under the operation of the general rule which I have stated, than *152 it would have been if it had consisted of many clauses. In all parts and all its provisions, it has reference to the period of division which it fixes. The testator directs the whole estate to be kept together, and improved for the benefit of his daughter and son, until either should come of age, or until the marriage of his daughter before maturity, then he directs the whole estate to be shared and divided between them. This provided for his children during minority, and also for both, when they or the daughter only had entered upon the cares and responsibilities of a life unrestrained by a parent’s, guardian’s, or an executor’s care. As would be natural, after making such a provision, the thought seems to have arisen in his mind — “ one or both of my children may die without children before the time which I have fixed for the division; in either case, what is to be done ?” The will proceeds to answer the question, by providing, 1st. If the daughter should die before marriage or maturity, then, that the negroes received by the testator in marriage with her mother, should revert to the childi’en of Peter Samuel Lefitt, of Savannah: 2d. If his son should die before the same event, without children, then, that the qo-i negroes received by the testator* in marriage with the mother of J his son, should revert to Henry Bona: 3d. If both should die, the daughter, before marriage or before attaining to full age, and the son under age and without issue, then that the whole remaining estate should be given to George Edwards and Eliza Edwards.
I have thus stated together the construction of the testator’s will, according to my reading of it, and it seems to me so perfectly obvious, that it would be almost unnecessary to urge an argument in support of it. But the cases are of so much expectation to the parties, and may be of some importance to the profession in confirming previous decisions, that I will, as well as I am able, and as briefly as I can, state the legal reasons for the construction. On looking to the will, it will be seen that the testator, after directing the division, adds, “which they and their issue, legally begotten, are to enjoy forever ; but in the ease of the demise of my daughter, my will is that all such negroes as I am possessed of through her mother, do revert to the children of Peter Samuel Lefitt.” The words preceding this contingent bequest, show that the testator, in looking to the death of his daughter, contemplated the possibility that that event might take place without issue, and if so, and it took place before her marriage, then, that the negroes of her mother should go over. For it is obvious on reading this part of the will, in connection with that which preceded it, directing the division, that it was a mere division for what might occur before it took place. If this was not so, the limitation over to the Lefitts would be on a general failure of issue, and would be void on account of its remoteness. The construction which I have resorted to in this respect is admissible, inasmuch as it sustains and does not defeat the bequest. If, however, the bequest could even take effect at the death of the daughter happening after marriage, and thus escape the objection for remoteness, then the result might be that the Lefitts would not find a single one of the negroes bequeathed to them in remainder in her possession. For, in the division the executors might have delivered these negroes to her brother; (the will imposes no restraint in this respect.) The Lefitts might, if the construction thus suggested was right, recover them from him, and he, under his father’s will, not be *153 entitled, to her share of her father’s estate. For the will only would give to him or her a cross-remainder in the event of her death before marriage or full age, or his death under* age and without issue. This p*, absurd consequence shows that such a construction cannot be L given to the bequest over to the Lefitts, and that this, as well as the other reasons already suggested, made their rights dependent on her death before marriage or full age. The same reasons apply to the bequest to Henry Bona, and make his rights dependent on the contingency of the death of the son, Thomas Henry, under age and without issue. For the testator intended the contingent bequests to the Lefitts and Bona to stand upon the same footing.
I have said that the cross-remainder in favor of the son depended on the death of his sister before marriage or full age, and that in favor of the daughter, on the death of the son under age or without issue. This is, I think, the true reading of the will. For, notwithstanding, in the latter part the testator speaks of both dying “under age or without issue,” yet, I apprehend these.words relate 'to the death of either before the period of division; and if so, my construction is the only one which can be given. For the division is to take place at the marriage of the daughter, or on either attaining to full age. That the words used in the latter part are intended to qualify and regulate the previous bequests at the time fixed for division, is obvious enough from the connection in which they are used. The testator says that they are additional to what had gone before, not that they are in place of the previous words. Read them as additional, and state the previous part of the will, with these additional words, thus — “The whole estate to be kept together for the benefit of my son and daughter, until either of them come of age, or the marriage of my daughter, then that it be divided between them ; but if both die without issue, then that the estate be given to George and Eliza Edwards, except the negroes received in marriage with the mother of my daughter and son.” When so stated, it is only necessary to read it, that it may be understood. The obvious propriety of this construction is thus made manifest, from placing the words to be construed in the juxtaposition which I have done.
If this view of the cross-remainders is correct, it defeats at once the devise over to George and Eliza Edwards. For it is then dependent on a contingency which has never happened — the death of the son under age,- and without issue. But in relation to the executory devise in their favor, it is subject to some other views, which put an end to all possible claims on their part in this behalf. The *will provides — “In case of the death of my daughter Mary and my son Thomas, prior to their L * being of age, or having issue, that the whole of my estate be given to George and Eliza Edwards.” Upon these words I remark that the words “he given,” naturally imply that some person was to have the legal -power to fulfil their meaning, by delivering over the estate to George and Eliza Edwards. If their estate was to be future and expectant, depending on a general failure of issue, it would have been too remote, and never could have had effect; if it depended on a failure of issue at the death of the first taker, then no one would have had the power of delivery contemplated by the will. For the executors’ duty was discharged, and their power ended when they put the property into the *154 possession of Thomas Henry Barksdale. But if the estate of George and Eliza Edwards depended upon the death of the daughter before marriage or maturity, and of the son under age without issue, then, as the estate would still be in the care of the executors, these words “be given,” to George and Eliza Edwards, could be given effect to by a delivery. Straws, we are told sometimes show us the course which the wind blows, so here, these words, unimportant as they appear to be, plainly point to an act to be done by his executors, in fulfilment of his intentions in favor of the devisees in remainder, and that their rights were to attach, or be defeated at the time fixed by the will for the division of the testator’s estate.
In the construction of this part of the will, I have taken, it as true that “or” must be construed “and.” I now proceed to assign the reasons why it is so. If I have been right in the construction that this provision points to the period of a division for its application, then there can be no doubt whatever that the word “or” was used by the testator in the sense and meaning of “and.” Eor any other meaning would give effect to a dying without issue beyond that time,- and might carry over the estate at the death of the devisee, no matter when it might take place.
But the case of Scanlan v. Porter, 1 Bail. 421, it seems' to me, decides the very point. The words there, were — " Should any of my children die before they are of age, or have lawful issue.” TlTe words here are ■ — “ In case of the deaths of my daughter Mary and my son Thomas, prior to being of age or having issue.” The provisions are almost in the same words; in substance they are indentical; and I am unable to qrI see “y just ground upon which a distinction* may be drawn be-'1 tween the two cases. The reasons given for the judgment of the Court in Scanlan v. Porter, might be used and applied with equal force and propriety to this case. In construing such words in a will, the obvious and clear intention of the testator would, I freely admit, overreach and defeat any artificial rule of construction. But when that is not the case, it is wiser and safer to adhere to a rule of construction than to resort to a conjectural exposition of the meaning.
If the detise to the son or daughter had been a fee conditional, I do not perceive that that would have altered the construction ; for, in such a case, the testator would be regarded as intending to qualify the pre'vious fee conditional by creating an executory devise over, to take effect on the contingency of the death of the tenants in fee conditional under age without issue; but if they live to that event, that then they should have the conditional fee with all its common law incidents. Perhaps the more correct remark upon such a disposition would be, that until twenty-one, or the death of the devisees before that age, leaving issue,'the estate of both son and daughter would be a mere executory devise, which - would, at twenty-one, or before twenty-one, if the devisees should die before that age, leaving issue, become a vested common law estate in fee conditional. These views dispose of the executory devise over to George and Eliza Edwards, and show that it cannot take effect, for the best of all possible reasons, that the contingency has never happened, Thomas Henry Barks-dale having lived beyond twenty-one.
2. This makes it necessary to inquire whether Thomas Henry Barks-dale took the real estate in fee conditional, or absolutely. The part of *155 the will upon which this depends, is in the following words : “ Respecting the lands and negroes now in my possession, I desire that the whole may be kept together and improved to the utmost of the abilities of my executors, for the mutual benefit of my daughter, Mary White Barksdale, and my son, Thomas Henry Barksdale, (requesting that they may have the best education that possibly can be had in South Carolina,) then on either arriving of age, or on the marriage of my daughter, prior to such period, I direct that the said estate, with all its accumulation, may be equally shared and divided between them, which they and their issue, legally begotten, are to enjoy for ever.” Notwithstanding I have said that this question depends upon the construction of the part *of p*. the will quoted, yet I do not mean to say that it is alone to be L y ‘ looked to in giving construction to it; indeed, it is manifest that other parts of the will must have a great effect upon this. As is said in Bedon v. Bedon, 2 Bail. 248, the device under consideration could not be considered a fee conditional; “ for that estate supposes a possibility of reverter.” In the case before us, the testator has shown that he never intended the estate to return, for the want of persons to take per formam doni; for he has, at least in one event, death before marriage or maturity without issue, provided how the estate should go by his will, and not by operation of law. Whitworth v. Stockey, 1 Richd. E. Repts. If the supposed estate of fee conditional, is, however, regarded as vesting and commencing on marriage or attaining to maturity, then it may be fairly argued that the testator did not intend to create such an estate, from the fact that the persons who would, on the extinction of his lineal descendants, be his heirs and next of kin, George and Eliza Edwards, and be entitled to the reverter, where by the will only to take upon the death of the daughter and son before marriage or full age, without issue. Under the will, and according to our unanimous construction, the son and daughter have cross remainders in the portion of the estate to which each would have been entitled. This, it seems to me, is at war with the notion of each having a conditional fee, for it is admitted on all hands, that there can be no such thing as a remainder after an estate in fee conditional; but if this obligation could be avoided by rejecting the remainder and relying on the fee conditional alone, then the son and daughter, each, had a conditional fee in one half the real estate. Upon- the death of the daughter, her half reverted, and as her brother was the only heir-at-law then surviving of the testator, he would come in under the reverter, and take her half of the estate absolutely. Such a result shows, as I conceive, the folly of attempting to make a conditional fee out of words which the testator never intended should have any such effect; but I hold there can be no such thing as a fee conditional where there is a good executory devise over. When the limitation is within a life or lives in being and twenty one years after, it cuts down and destroys the effect of even a previous devise to one and the heirs of his body, by showing that the testator did not look to an indefinite sticcession, and that he did not intend his devisee to have all the incidents of the common law estate of fee conditional, such as the power to alien or encumber the estate; for, in *such a devise, it is clear that his alienation, even after the birth of issue, would not bar the remainder man, if at the death of the [*198 *156 devisee lie had no issue then living. If the devise be to A. and the heirs of his body, and there are no words to restrain their indefinite import, then an executory devise over, after a failure of such heirs of the body, would be void for remoteness. In the first case which I have put, if it is not a conditional fee in the first taker during his lifetime, it cannot be so in his issue, for they must take through him and by descent. The words “heirs of the body,” in such a case, must be regarded as merely marking the testator’s intention, that if the devisee died without issue living at his death, that the estate should go over, otherwise it should not, and in this point of view the estate might be regarded as a fee simple defeasible. I am aware that this puts the doctrine in a point of view not altogether usual; it is, however, the only means of reconciling two rules of law. Isi. That a limitation over, after afee conditional, is void; 2d. That a limitation over which is to take effect within a life or lives in being is good.
The words of the devise, however, which are supposed to make it a fee conditional, cannot, in m'y judgment, have that effect. The words “their issue legally begotten,’’ are not necessary words upon which such an estate would arise at common law. According to it, as it stood before the statute de donis, the words “ heirs of the body” seem to be the only words on which a conditional fee was allowed. Indeed, in the earlier days of judicial exposition of the common law, the word “issue” was held to be a word of purchase. Under the statute de donis, the word “ issue” has, I admit, been held to be sufficient to imply an estate tail, and for a most obvious and just reason. Such an implication is in exact accordance with the intention of that statute, as expounded by the English Judges, when they divided the estate under it — 1st, into a life estate in the first taker ; 2d, the estate to the issue per formam doni, and 3d, the reversion. But this cannot aid the plaintiffs’ (George, and the heirs of Eliza Edwards) argument here,' for their estate must be judged of by the law, without the statue de. donis. To constitute a fee conditional, the words must import inheritance and procreation; for the descendants of the tenant in fee conditional, take as heirs and heirs of the body. The term “ issue” may include these as persons, but not as inheritors. To give *iqql them that effect, we must imply, that the testator intended that *they •* should come in by descent. I have denied, in Bedon v. Bedon, 2 Bail. 231, and Adams v. Chaplin, 1 Hill’s Ch. 265, that a fee conditional can arise by implication, and I am perfectly satisfied of the correctness of the position, and prepared to carry it out and give it effect in all cases.
But I am persuaded, that in another point of view, the words before us cannot have the effect contended for by the plaintiffs, George, and the heirs of Eliza Edwards. They are not parts of the gift — it was complete without them. The words previously used, directing a division of the estate between the son and daughter, were enough (I should think) at common law to give them the fee ; but, when they are construed under our act, there can be no question that the daughter’s and son’s respective estates, when the daughter married or attained to twenty-one, and the son was of full age, were fees simple absolute.' — Bedon v. Bedon, 2 Bail. 231; Adams v. Chaplin, 1 Hill’s Ch. Rep. 265. As Thomas Henry *157 Barksdale attained that age, and was entitled on the previous words to that estate, were the subsequent words intended to change the legal character of it ? I think not. They are more descriptive of the enjoyment of the estate which the testator thought would result to his son and daughter and their issue forever, from the division of it between them under the provisions of this will: as is said by my brother Johnson, in Manigault v. Deas, they are used “ as marking the quantity of the estate” which the devisees took. They were the mere expression of hope on the part of an anxious parent, that the estate would descend from generation to generation in his blood forever. But they were not used as restrictive of the previous estate; if any idea of their legal effect entered into the mind of the testator, it was that they would show that the estate was in his children forever.
These views show satisfactorily, at least to my mind, that the plaintiffs (George Edwards and the heirs of his sister, Eliza Edwards) cannot take under the executory devise over; nor as the heirs of the testator. So much of their bill as sets up these claims, ought to be dismissed; it ought however to be retained, so far as they claim as next of kin of the deceased, Thos Henry Barksdale. So, too, so much of the bill of Henry Bona as claims, under the will of George Barksdale, the negroes which belonged to the mother of Thomas Henry Barksdale, ought to be dismissed ; but so much as claims as next of kin of Thomas Henry Barks-dale, *ought to be retained. The question of who are his next of kin, has not been tried ; the cases must go back for the purpose of L trying it, and of making partition between the widow and next of kin.
It is ordered and decreed, that the Circuit decree be reversed, and the causes remanded to the Circuit Court for the purpose of ascertaining the next of kin of Thos. Henry Barksdale, (deceased,) and making partition of his estate between them and the defendant, Mrs. M. S. Barksdale, his widow. The costs of both cases to be paid out of the estate.
Johnson, J., concurred.